UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL SHAW,                                          :

      Petitioner,     :   11 Civ. 4852 (RJS) (AJP)

   -against-      :  **REPORT AND RECOMMENDATION**

R. WENDLEND,                                           :

      Respondent.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard J. Sullivan, United States District Judge:**

     Pro se petitioner Michael Shaw seeks a writ of habeas corpus from his June 10, 2008 conviction, after a jury trial in Supreme Court, New York County, of first degree rape and third degree burglary, and sentence of consecutive terms of 12 1/2 to 25 years imprisonment on the rape count and 3 1/2 to 7 years imprisonment on the burglary count.  (Dkt. No. 2: Pet. ¶¶ 1-4.)

     Shaw's habeas petition asserts that:  (1) Shaw's trial counsel was ineffective for failing to submit a motion alleging police and prosecutorial misconduct for permitting a journalist to photograph Shaw while detectives transported him to arraignment (Pet. ¶ 12(A)); (2) the indictment was defective because the grand jury did not accuse Shaw of any crimes (Pet. ¶ 12(B)); (3) Shaw was denied his right to appeal when the First Department denied leave to appeal the denial of his C.P.L. § 440 motion (Pet. ¶ 12(C)); and (4) two prosecution witnesses committed perjury at trial (Pet. ¶ 12(D)).  (See also Dkt. No. 24: Shaw Traverse.)

     For the reasons set forth below, Shaw's habeas corpus petition should be **DENIED**.

G:\OPIN\SHAWvWENDLEND

## FACTS

On February 3, 1993, Shaw entered a clothing manufacturing shop and robbed and raped a woman at knifepoint.  (Dkt. No. 17: Gill Aff. Ex. I: Shaw 1st Dep't Br. at 2; Gill Aff. Ex. J: State 1st Dep't Br. at 1-2.)  In 2002, a computerized "cold case" DNA analysis of the victim's rape kit matched Shaw's DNA.  (Shaw 1st Dep't Br. at 3; State 1st Dep't Br. at 2.)  Shaw was charged with rape, robbery and burglary.  (Shaw 1st Dep't Br. at 3, 5; State 1st Dep't Br. at 3.)

### The Trial[1/]

On May 12, 2008, Shaw proceeded to trial before Justice Renee White and a jury. (Gill Aff. Exs. 3-4: 2d Trial Transcript ("Tr.") 1.)

#### Preliminary Motions

Prior to jury selection, Shaw requested that he be permitted to appear pro se because his attorney would not make two motions:  (1) alleging police and prosecutorial misconduct for permitting a journalist to photograph Shaw when the arresting detectives transported Shaw from prison to arraignment (Dkt. No. 20: Gill Aff. Ex. 3: Tr. 11-13), and (2) alleging that the indictment was defective because the grand jury did not accuse Shaw of any crimes (Tr. 14-15).  Justice White denied both motions and talked Shaw out of going pro se.  (Tr. 14, 15, 17.)

---

[1/]     On December 2, 2004, the jury in Shaw's first trial convicted Shaw of first degree rape and second and third degree burglary.  (Dkt. No. 20: Gill Aff. Exs. 1-2: 1st Trial Transcript ("1st Tr.") 387-90.)  The First Department reversed and remanded for a new trial on the ground that the trial court erroneously declined to inquire whether a sworn juror had indicated bias against the defense.  People v. Shaw, 43 A.D.3d 685, 841 N.Y.S.2d 304 (1st Dep't 2007).

The prosecutor moved to introduce the testimony of Dr. Cho from the first trial, since Dr. Cho was retired and living in South America.  (Tr. 17-19.)  Justice White granted the motion, but excluded portions of the testimony relating to statements by the victim.  (Tr. 20-21, 23-26.)

Shaw's counsel moved to exclude the statements made by the victim during a telephone call following the crime to Pam Ample, a friend and co-worker, under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004).  (Tr. 27-32.)  Justice White denied the motion. (Tr. 31-32.)[2]

**The Prosecution Case at Trial**

On February 3, 1993, production manager WF[3] was the last one in the office of Chatelle Limited, located at 250 West 40th Street, fourth floor.  (Dkt. No. 20: Gill Aff. Exs. 3-4: Holder: Tr. 263; Ample: Tr. 288-89.)  When Cynthia Holder, WF's co-worker, left around 5:30 p.m., WF locked the door.  (Holder: Tr. 267-68, 282.)  When WF was closing the office to leave, she was approached from behind by a black male with a knife and was forced back into her office.  (Cole: Tr. 374.)  She was robbed of approximately $100 and jewelry.  (Cole: Tr. 374.)  After stating, "'I never had a Chinese woman,'" the attacker raped WF.  (Cole: Tr. 374; Dunn: Tr. 389.)  The attacker also cut the telephone lines.  (Tacchi: Tr. 338, 354-55.)

After the attacker left, WF called Pam Ample, a friend and co-worker.  (Holder: Tr. 264; Ample: Tr. 287, 292-93, 303.)  WF was hysterical, sobbing and difficult to understand.

---

[2]     Shaw's counsel also moved to exclude statements made by the victim to other witnesses pursuant to Crawford v. Washington (see Tr. 32-41), but they are not in issue in Shaw's federal habeas petition.

[3]     To protect the victim's privacy, she will be referred to by her initials instead of her name.

(Ample: Tr. 294.)  WF said she was robbed and said, "'He hurt me and he made me do bad things.'" (Ample: Tr. 294-95.)  Ample asked, "'Did he rape you, [WF]?'" (Ample: Tr. 295, 304.)  WF replied, "'[y]es,'" and said that he was big, smelled, hurt her, and made her do bad things, sexual things. (Ample: Tr. 295.)  Ample's assistant called 911.  (Ample: Tr. 296, 303.)

When Detective Michael Cole and paramedic Joyce Dunn arrived, WF was upset, crying, shaken and "almost like in shock."  (Cole: Tr. 370-71; Dunn: Tr. 384, 386, 388-89, 397.) The Chatelle office was in disarray.  (Cole: Tr. 371, 381-82; Holder: Tr. 279-81; Ample: Tr. 300-01.)  WF told Detective Cole and Dunn that she had been raped.  (Cole: Tr. 374; Dunn: Tr. 389, 391, 395.)  During a physical examination performed by Dunn, WF complained of vaginal pain and that her knee had been cut with a knife.  (Dunn: Tr. 390-92.)  Dunn took WF to St. Vincent's Hospital where doctors and nurses performed a "rape kit" examination, taking vaginal, anal and saliva swabs. (Dunn: Tr. 393; Cho: 1st Tr. 99, 112-13, 119-22; <u>see</u> Tr. 398-99: reading of Dr. Cho's prior testimony to the jury.)  WF suffered a one centimeter superficial cut to her leg and received medication to prevent sexually transmitted diseases.  (Cho: 1st Tr. 103-04, 108-12, 126-28.)  The police made no further progress in the case and it remained unsolved.  (Tacchi: Tr. 315.)  WF died on December 30, 1995.  (Ample: Tr. 297; Tacchi: Tr. 317.)

On November 23, 2002, Detective Edward Tacchi, an investigator with the Manhattan District Attorney's Office Sex Crimes Unit, received a lead from the DNA Backlog Project[4] regarding WF's unsolved case.  (Tacchi: Tr. 313, 316; Sandomir: Tr. 400.)  In the summer

---

[4]      The DNA Backlog Project began in 2000 as a collaborative effort between the New York
(continued...)

of 2002, OCME had tested WF's rape kit and in October 2002 uploaded a male profile from WF's

vaginal swab to the CODIS DNA data bank.  (Samples: Tr. 416-17, 419.)  In November 2002,

OCME was advised that there was a match with the DNA of Michael Shaw.  (Samples: Tr. 419-20.)

On December 5, 2002, Detectives Tacchi and Alan Sandomir traveled to Sing Sing,

where Shaw was imprisoned on another matter, to interview Shaw.  (Tacchi: Tr. 318, 343-44.)  The

detectives read Shaw his Miranda rights.  (Tacchi: Tr. 318-24, 343-44.)  The detectives showed

Shaw a picture of WF as she appeared in 1993, and Shaw denied ever seeing her before, writing,

"'Never seen her before'" on the photo.  (Tacchi: Tr. 329-30, 349.)  Detective Tacchi asked Shaw

if he had ever dated an Asian woman, and Shaw replied, "'I never dated a Chinese woman.  I wanted

to.'"  (Tacchi: Tr. 331.)  When asked about carrying knives, Shaw said, "'I didn't carry knives, razors,

no weapons'" in the 1990s.[5]  (Tacchi: Tr. 331-32, 353.)  When asked about an incident at 250 West

40th Street, Shaw responded, "'I don't remember her face.  I don't remember what you're talking

about. . . .  I never raped nobody in my life.'"  (Tacchi: Tr. 332-33, 340, 349, 355.)

---

[4]    (...continued)
City Police Department and the Office of the Chief Medical Examiner ("OCME") to test
previously untested evidence for the presence of DNA and to generate DNA profiles from
the evidence that was in storage.  (Tacchi: Tr. 315-16; Samples: Tr. 410.)  Under the
Backlog Project, OCME developed DNA profiles from DNA samples taken at crime scenes
and through rape kits.  (Samples: Tr. 411.) OCME compared these DNA profiles with a State
database that contained DNA samples from both crime scenes and known individuals to see
if there were any matches.  (Samples: Tr. 411-12.)  OCME tested over 16,000 samples from
storage in this manner.  (Samples: Tr. 410-11.)

[5]    Shaw originally said, "'I didn't carry knives, razors, no weapons in 1993.'"  But on reviewing
the statement, he changed "1993" to "1990s."  (Tacchi: Tr. 353.)

Detective Sandomir told Shaw that there was physical evidence of a personal nature connecting Shaw to the location.  (Tacchi: Tr. 333-34, 340, 350, 352-53.)  Detective Tacchi asked, "'Did you give her any money for anything?'"  (Tacchi: Tr. 333.)  Shaw responded, "'I didn't give her money for sex.  She gave me money for sex.  She gave me like $15 for sex.  She met me in that building.'"  (Tacchi: Tr. 333, 353-54.)  When asked why he was in that building, Shaw replied, "'I was going to do a robbery, but it didn't turn out that way.  She was scared.  We talked about a bunch of stuff.  I guess she thought I was going to hurt her as a horny black guy in the building.'"  (Tacchi: Tr. 334.)  The detectives again told Shaw that there was physical evidence connecting him to the location, and he replied, "'I took DNA three years ago.'"  (Tacchi: Tr. 334.)  When asked if he had mentioned his name to her, he replied, "'She doesn't know my name.  If it wasn't from DNA I might have told her my name.'"  (Tacchi: Tr. 334.)  When asked if he had a knife, Shaw responded, "'I don't remember having a knife, not that I remember.  She didn't see me with a knife.'"  (Tacchi: Tr. 336, 355.)  When asked about how the phone lines had been cut, Shaw denied using a knife, saying: "'I used scissors to cut the phone lines.'"  (Tacchi: Tr. 338, 354-55.)

Detective Tacchi confronted Shaw with the implausibility of his story:

> "We have a 44 year old Asian woman who is married.  It's between 5 and 6 p.m. on Wednesday afternoon.  She is about to go home from her work and you walk in and, of course, then she offers to have sex with you and to pay you for sex."

(Tacchi: Tr. 337-38.)  Shaw stated:  "'It was evident that she had a change of heart, that's why you're here.'"  (Tacchi: Tr. 338, 356.)  Detective Tacchi told Shaw that his story lacked credibility, and Shaw became "agitated" and stated:

"The fucking bitch I raped, they took DNA three years ago and now you're here. I'm not going to just lay down and say I raped her, robbed her. I'm not copping out to no rape case. If you want me to say I raped her, I'm not saying it. I don't care what she said. I don't care if my story is not credible."

(Tacchi: Tr. 338.)

Pursuant to a court order, a confirmatory swab was obtained from Shaw and submitted to OCME for DNA verification purposes. (Sandomir: Tr. 400-01; Samples: Tr. 420-21.) OCME developed a DNA profile from Shaw's swab, compared it to the sample obtained from WF's rape kit and they matched. (Samples: Tr. 422.) An OCME expert testified that there was a one in one trillion chance that two people would have the same DNA profile as that developed from the semen in WF's rape kit. (Samples: Tr. 422.)

At the close of the prosecution case, defense counsel moved for "dismissal of the charges on the People's failure to prove a legally sufficient case pursuant to the rules of Criminal Procedure Law." (Tr. 433.) Justice White denied the motion. (Tr. 433.)

The defense rested without calling any witnesses. (Tr. 433-38.)

**Verdict and Sentence**

The jury convicted Shaw of first degree rape and third degree burglary, but found him not guilty of second degree burglary. (Dkt. No. 20: Gill Aff. Ex. 4: Tr. 545-48.)

On June 10, 2008, Justice White sentenced Shaw as a predicate felon to consecutive terms of 12 1/2 to 25 years for first degree rape and 3 1/2 to 7 years for third degree burglary. (Gill Aff. Ex. 4: Sentencing Tr. 2-3, 6.)

**Shaw's C.P.L. § 440 Motion**

Shaw filed a pro se C.P.L. § 440 motion arguing that there was "[i]mproper prejudicial conduct by the arresting detectives and prosecuting attorney, which defense counsel failed to raise these pertinent issues before or during the trial" and that "judgment was obtained in violation of the defendant's rights under the N.Y. Constitution Article 1, § 6 and the Sixth and Fourteenth Amendments of the United States Constitution, by counsels failure to provided the defendant with adequate and meaningful representation." (Dkt. No. 17: Gill Aff. Ex. A: Shaw Notice of Motion at 1.) According to Shaw, the improper conduct was "conspir[ing] to have a freelance journalist take pictures of [Shaw] and one of the arresting detectives while we were walking out of the front gate of Sing Sing Correctional Facility." (Gill Aff. Ex. A: Shaw § 440 Aff. at 2.)

Justice White denied Shaw's C.P.L. § 440 motion. (Gill Aff. Ex. D: Justice White 12/1/08 Decision at 2.) Finding "that defendant and his trial counsel raised the issue of the pre-trial photographs with the trial court prior to trial, that the People had asserted on the record that defendant's rights had not been violated, and that the trial court ruled that defendant's rights had not been violated," Justice White held that "sufficient facts appear on the record to permit adequate review on defendant's pending [direct] appeal." (Justice White 12/1/08 Decision at 2.)

On March 23, 2009, the First Department denied Shaw leave to appeal from Justice White's denial of Shaw's § 440 motion. (Gill Aff. Ex. H: 3/23/09 1st Dep't Cert. Denying Leave.)

**Shaw's Direct Appeal**

Represented by the Center for Appellate Litigation, Shaw's direct appeal to the First Department argued that: (1) Shaw's constitutional right to be confronted with the witnesses against him was violated when Detective Cole and Dr. Cho testified about statements made to them by WF (Dkt. No. 17: Gill Aff. Ex. I: Shaw 1st Dep't Br. at 25-38), and (2) Shaw received ineffective assistance of counsel because counsel failed to object to the imposition of consecutive sentences (Shaw 1st Dep't Br. at 38-51).

In a supplemental pro se brief, Shaw argued that: (1) the indictment was defective because it did not accuse him by name (Gill Aff. Ex. K: Shaw Pro Se Supp. 1st Dep't Br. at 13-24), (2) the prosecution committed misconduct when detectives improperly allowed a journalist to film Shaw while he was transported from Sing Sing to his arraignment (id. at 24-27), and (3) Holder and Ample submitted perjured testimony violating Shaw's confrontation rights (id. at 27-31).

On January 11, 2011, the First Department affirmed Shaw's conviction, holding:

> The court did not violate [Shaw's] right of confrontation when it received two declarations by the nontestifying victim in which she described being raped, since neither declaration was testimonial. . . .

> [Shaw's] trial counsel did not render ineffective assistance by failing to challenge the constitutionality under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 [2000] of the procedure by which the court imposed consecutive sentences, since such a challenge would have been unavailing.

> We have considered and rejected the claims contained in [Shaw's] pro se supplemental brief.

People v. Shaw, 80 A.D.3d 465, 465-66, 914 N.Y.S.2d 155, 156-57 (1st Dep't. 2011) (citation omitted).[6/]   On April 22, 2011, the New York Court of Appeals denied leave to appeal.  People v. Shaw, 16 N.Y.3d 863, 923 N.Y.S.2d 425 (2011).

**Shaw's Federal Habeas Petition**

On July 5, 2011, Shaw filed a pro se federal habeas corpus petition arguing that: (1) Shaw's trial counsel was ineffective for failing to submit a motion alleging police and prosecutorial misconduct for permitting a journalist to photograph Shaw while detectives transported Shaw from Sing Sing to his arraignment (Pet. ¶ 12(A)); (2) the indictment was defective because the grand jury did not accuse Shaw of any crimes (Pet. ¶ 12(B)); (3) Shaw was denied his right to appeal when the First Department denied leave to appeal from the denial of his C.P.L. § 440 motion (Pet. ¶ 12(C)); and (4) the prosecution's first two witnesses committed perjury at trial (Pet. ¶ 12(D)). (See also Dkt. No. 24: Shaw Traverse.)

## ANALYSIS

### I.    THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

---

[6/]    On December 10, 2009, the First Department had affirmed Shaw's conviction in virtually identical language, but that decision was vacated to allow Shaw to file a pro se supplemental brief.  See People v. Shaw, 68 A.D.3d 507, 890 N.Y.S.2d 524 (1st Dep't 2009), appeal denied, 14 N.Y.3d 805, 899 N.Y.S.2d 139 (2010).

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[7/]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[8/]  Both,

---

[7/]    See also, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1418 (2009); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1691, 1693 (2011); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'" (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

[8/]    Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d (continued...)

however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."

Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[9]  "That federal law, as defined by the

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law

or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v.

Miller, 289 F.3d at 42; accord, e.g., Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied,

555 U.S. 1176, 129 S. Ct. 1312 (2009).  "A petitioner can not win habeas relief solely by

demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker,

341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

　　　　As to the "contrary to" clause:

_____

[8]　　　(...continued)
　　　　315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[9]　　　Accord, e.g., Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the
　　　　lack of holdings from this Court regarding [this issue], it cannot be said that the state court
　　　　'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541
　　　　U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or
　　　　principles set forth by the Supreme Court at the time the state court renders its decision.'");
　　　　Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade,
　　　　538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established'
　　　　phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as
　　　　of the time of the relevant state-court decision.'"); Portalatin v. Graham, 624 F.3d at 79 ("To
　　　　qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must
　　　　be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent.");
　　　　Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160,
　　　　164 (2d Cir.), cert. denied, 130 S. Ct. 642 (2009); Hargett v. Giambruno, 291 F. App'x 402,
　　　　403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587,
　　　　591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Yung v. Walker,
　　　　341 F.3d 104, 109-10 (2d Cir. 2003); Parsad v. Greiner, 337 F.3d at 181; DelValle v.
　　　　Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Kennaugh v. Miller, 289 F.3d 36, 42 (2d
　　　　Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178,
　　　　184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[10/]

      In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[11/]  However,

---

[10/]   Accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 538 U.S. at 73-74, 123 S. Ct. at 1173-74; Portalatin v. Graham, 624 F.3d at 79; Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d 149, 156 (2d Cir. 2009), cert. denied, 131 S. Ct. 320 (2010); Dunlap v. Burge, 583 F.3d at 164; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; DelValle v. Armstrong, 306 F.3d at 1200; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[11/]   Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1399; Waddington v. Sarausad, 555 U.S. 179, 190, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Bierenbaum v. Graham, 607 F.3d at 48; Brisco v. Ercole, 565 F.3d 80, 87 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009); Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, (continued...)

"[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct.

at 1522.  The Supreme Court made clear that "an unreasonable application of federal law is different

from an incorrect application of federal law."  Id.[12]  Rather, the issue is "whether the state court's

application of clearly established federal law was objectively unreasonable."  Williams v. Taylor,

529 U.S. at 409, 120 S. Ct. at 1521.[13]  "Objectively unreasonable" is different from "clear error."

---

[11]     (...continued)
         443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007);
         Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[12]     See also, e.g., Renico v. Lett, 130 S. Ct. 1855, 1862 (2010); Waddington v. Sarausad, 555
         U.S. at 190, 129 S. Ct. at 831; Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150;
         Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123
         S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ
         simply because that court concludes in its independent judgment that the state-court decision
         applied [a Supreme Court case] incorrectly.'" (quoting Woodford v. Visciotti, 537 U.S. 19,
         24-25, 123 S. Ct. 357, 360 (2002))); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175;
         Dunlap v. Burge, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the
         relevant federal law should have been interpreted differently than the way it was interpreted
         by the state court yet still conclude that the state court's application of the federal law was
         not unreasonable."); Brisco v. Ercole, 565 F.3d at 87-88; Jones v. West, 555 F.3d at 96;
         Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443
         F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v.
         McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at
         124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore,
         if the state court's decision was not an unreasonable application of, or contrary to, clearly
         established federal law as defined by Section 2254(d), we may not grant habeas relief even
         if in our judgment its application was erroneous.").

[13]     Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
         Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct.
         at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti,
         537 U.S. at 25-27, 123 S. Ct. at 360-61; Portalatin v. Graham, 624 F.3d at 79; Dunlap v.
         Burge, 583 F.3d at 165; Davis v. Grant, 532 F.3d at 140; Mosby v. Senkowski, 470 F.3d 515,
         519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); Hawkins v. Costello,
         460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard
                                                                                    (continued...)

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness.").  This is a

"'substantially higher threshold'" than incorrectness.  Renico v. Lett, 130 S. Ct. at 1862; accord, e.g.,

Knowles v. Mirzayance, 129 S. Ct. at 1420.[14/]  Federal habeas relief is precluded "so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

Richter, 131 S. Ct. 770, 786 (2011).  "This is a 'difficult to meet' and 'highly deferential standard for

evaluating state-court rulings.'"  Cullen v. Pinholster, 131 S. Ct. at 1398 (citations omitted).

   "[T]he range of reasonable judgment can depend in part on the nature of the relevant

rule."  Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149.[15/]  "Even if the state court issued

---

[13/]  (...continued)
   v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d
   at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184;
   Lurie v. Wittner, 228 F.3d at 128-29.

[14/]  However, the Second Circuit has explained "that while '[s]ome increment of incorrectness
   beyond error is required . . . the increment need not be great; otherwise, habeas relief would
   be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"
   Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.
   2000)); accord, e.g., Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown
   v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable
   application' standard 'falls somewhere between merely erroneous and unreasonable to all
   reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246;
   Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396
   F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Yung v. Walker, 341 F.3d at 110;
   Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Loliscio v. Goord, 263
   F.3d at 184.

[15/]  The Supreme Court explained:

     [T]he range of reasonable judgment can depend in part on the nature of the relevant
     rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule
                                (continued...)

a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . .

unless application of a <u>correct</u> interpretation of that [Supreme Court] decision leads to the

conclusion that his rights were violated.'" <u>Cousin</u> v. <u>Bennett</u>, 511 F.3d 334, 339 (2d Cir.), <u>cert.</u>

<u>denied</u>, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

   Moreover, the Second Circuit has held "that a state court determination is reviewable

under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme

Court defined, legal principle to situations which that principle should have, in reason, governed."

<u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[16/]

---

[15/] (...continued)
   may be plainly correct or incorrect. Other rules are more general, and their meaning
   must emerge in application over the course of time. Applying a general standard to
   a specific case can demand a substantial element of judgment. As a result,
   evaluating whether a rule application was unreasonable requires considering the
   rule's specificity. The more general the rule, the more leeway courts have in
   reaching outcomes in case-by-case determinations.

  <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149; <u>accord</u>, <u>e.g.</u>, <u>Harrington</u> v.
<u>Richter</u>, 131 S. Ct. at 786; <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. at 1864; <u>Knowles</u> v. <u>Mirzayance</u>, 129
S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has
even more latitude to reasonably determine that a defendant has not satisfied that standard.");
<u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d at 157;
<u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 166; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243.

[16/] <u>Accord</u>, <u>e.g.</u>, <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 47-48; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140-41;
<u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>see</u> <u>Yarborough</u> v.
<u>Alvarado</u>, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a
habeas court must extend a rationale before it can apply to the facts at hand then the rationale
cannot be clearly established at the time of the state-court decision. There is force to this
argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not
clearly established under the guise of extensions to existing law. At the same time, the
difference between applying a rule and extending it is not always clear. Certain principles
are fundamental enough that when new factual permutations arise, the necessity to apply the
                       (continued...)

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1398; Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam) ("On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)); Renico v. Lett, 130 S. Ct. at 1862; Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.  "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to th[e] record in an unreasonable manner." Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1398 ("The petitioner carries the burden of proof."); Georgison v. Donelli, 588 F.3d at 154.  As the Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . . [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decisions conflict with [the Supreme] Court's precedents.  It goes no further. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 131 S. Ct. at 786-87.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies.

---

16/      (...continued)
        earlier rule will be beyond doubt." (citations omitted)).

> Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.  And as this Court has observed, a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d).  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

Harrington v. Richter, 131 S. Ct. at 784 (citations to Sellan v. Kuhlman, 261 F.3d at 312, & other

cases omitted); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1402; Bell v. Cone, 543 U.S. at 455,

125 S. Ct. at 853; Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required

to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long

as neither the reasoning nor the result of the state-court decision contradicts them."); Wilson v.

Mazzuca, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the

rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the

federal court will focus its review on whether the state court's ultimate decision was an unreasonable

application of clearly established Supreme Court precedent.'").[17/] "'[A] habeas court must determine

what arguments or theories . . . could have supporte[d] the state court's decision; and then it must

ask whether it is possible fairminded jurists could disagree that those arguments or theories are

---

[17/]    See also, e.g., Wade v. Herbert, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

inconsistent with the holding in a prior decision of [the Supreme] Court.'" <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1402.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 784-85.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1398.

Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); <u>accord</u>, <u>e.g.</u>, <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 48; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246-47; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181 (quoting § 2254(e)(1)); <u>accord</u>, <u>e.g.</u>, <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); <u>Brown</u> v. <u>Alexander</u>, 543 F.3d at 100; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246-47.

II.   **SHAW'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS UNEXHAUSTED, BUT DEEMED EXHAUSTED AND PROCEDURALLY BARRED, AND IN ANY EVENT IS MERITLESS**

A.   **Shaw's Ineffective Assistance of Counsel Claim Is Unexhausted**

1.   **The Exhaustion Doctrine:  Background**

Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -- (A) the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A).[18]  As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  Rose v. Lundy, 455 U.S. at 518, 102 S. Ct. at 1203; accord, e.g., O'Sullivan v. Boerckel,  526 U.S. at 845, 119 S. Ct. at 1732.

The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

---

[18]   See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948" in 28 U.S.C. § 2254.); Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990); Daye v. Attorney Gen., 696 F.2d 186, 190-94 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048, 104 S. Ct. 723 (1984).

Diaz v. Coombe, 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.) (quoting Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)); accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 843-48, 119 S. Ct. at 1732-34.

"The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney Gen., 696 F.2d at 191.[19/]  The Second Circuit has held that a federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. E.g., Cox v. Miller, 296 F.3d at 99; Jones v. Vacco, 126 F.3d at 413-14; Grady v. LeFevre, 846 F.2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89 (2d Cir. 1984); Daye v. Attorney Gen., 696 F.2d at 191.  In Daye, the Second Circuit en banc stated:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen., 696 F.2d at 194.[20/]

---

[19/]  Accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 844, 119 S. Ct. at 1732; Picard v. Connor, 404 U.S. at 275-76, 92 S. Ct. at 512; Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir.), cert. denied, 540 U.S. 1046, 124 S. Ct. 804 (2003); Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002), cert. denied, 537 U.S. 1192, 123 S. Ct. 1273 (2003); Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997).

[20/]  Accord, e.g., Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005); Rosa v. McCray, 396 F.3d 210, 217-18 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); St. Helen v. Senkowski, 374 F.3d 181, 182-83 (2d Cir. 2004), cert. denied, 543 U.S. 1058, 125 S. Ct. 871 (2005); Cox v. Miller, 296 F.3d at 99;
(continued...)

The Supreme Court has confirmed the long-held view of the Second Circuit that "a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement."  O'Sullivan v. Boerckel, 526 U.S. at 839-40, 119 S. Ct. at 173.[21/]

### 2.    Application to Shaw's Claim

Shaw claims that trial counsel was ineffective for failing to submit a motion alleging police and prosecutorial misconduct for permitting a journalist to photograph Shaw while detectives transported him from Sing Sing to his arraignment on these charges.  (Dkt. No. 2: Pet. ¶ 12(A); Dkt. No. 24: Shaw Traverse at 3-6.)

---

[20/]    (...continued)
Ramirez v. Attorney Gen., 280 F.3d 87, 95 (2d Cir. 2001); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 124 (2d Cir. 1995), cert. denied, 520 U.S. 1106, 117 S. Ct. 1112 (1997); Grady v. LeFevre, 846 F.2d at 864; Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986); Petrucelli v. Coombe, 735 F.2d at 688.

[21/]    Accord, e.g., Rosa v. McCray, 396 F.3d at 217; Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir.), cert. denied, 544 U.S. 1025, 125 S. Ct. 1996 (2005); Calderon v. Keane, 115 F. App'x 455, 457 (2d Cir. 2004); Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003); Ramirez v. Attorney Gen., 280 F.3d at 94; Jordan v. LeFevre, 206 F.3d 196, 198 (2d Cir. 2000); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir.), cert. denied, 531 U.S. 819, 121 S. Ct. 59 (2000); Bossett v. Walker, 41 F.3d at 828 ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); Pesina v. Johnson, 913 F.2d at 54 ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition," citing Daye); Daye v. Attorney Gen., 696 F.2d at 191 n.3 ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had.").

Shaw raised at trial the underlying claim that the prosecutor and police committed misconduct (see page 2 above), and raised that claim and the related ineffective assistance claim in his C.P.L. § 440 motion (see page 8 above).   Justice White held that since the issue of the photographs was raised at trial,  "sufficient facts appear[ed] on the record to permit adequate review on defendant's pending [direct] appeal."  (See page 8 above.)[22/]  Shaw, however, failed to raise this ineffective assistance claim on his subsequent direct appeal.  (See page 9 above.)

"'For exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."'"  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (quoting Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9 (1989))).[23/]  "In such a case, a petitioner no longer has 'remedies available in the courts of the State'

---

[22/]    "Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on [C.P.L. § 440.10](2)(c) provides an independent and adequate procedural bar to federal habeas review."  Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007), cert. denied, 552 U.S. 1150, 128 S. Ct. 1083 (2008); see, e.g., Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) (Petitioner's "appellate counsel unjustifiably failed to argue this ineffective assistance claim on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c). Accordingly, [petitioner's] claim is procedurally defaulted for the purposes of federal habeas review as well."); Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); Baxter v. Conway, 07 Civ. 2759, 2011 WL 5881846 at *3 (S.D.N.Y. July 29, 2011), report & rec. adopted, 2011 WL 5881190 (S.D.N.Y. Nov. 23, 2011); Graves v. Cunningham, 09 Civ. 5837, 2010 WL 2942614 at * 11 (S.D.N.Y. May 26, 2010), report & rec. adopted, 2010 WL 2985473 (S.D.N.Y. July 27, 2010); Flowers v. Ercole, 06 Civ. 6118, 2009 WL 2986738 at *8 (S.D.N.Y. Sept. 18, 2009).

[23/]    Accord, e.g., Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059 (1989) ("It would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined . . . ."); St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) ("[E]ven if a federal claim has not (continued...)

within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d at 120. Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts. E.g., St. Helen v. Senkowski, 374 F.3d at 183; DiGuglielmo v. Smith, 366 F.3d at 135; McKethan v. Mantello, 292 F.3d at 122-23; Ramirez v. Attorney Gen., 280 F.3d at 94; Reyes v. Keane, 118 F.3d at 139; Bossett v. Walker, 41 F.3d at 828; Washington v. James, 996 F.2d 1442, 1446-47 (2d Cir. 1993), cert. denied, 510 U.S. 1078, 114 S. Ct. 895 (1994); Grey v. Hoke, 933 F.2d at 120-21.

Accordingly, because Shaw did not include his ineffective assistance claim in his direct appeal, and Shaw cannot now appeal to the First Department, Shaw's claim is unexhausted, but deemed exhausted and procedurally barred. Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) ("Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals . . . ."); see, e.g., Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007); O'Kane v. Kirkpatrick, 09 Civ. 5167, 2011 WL 3809945 at *8 (S.D.N.Y. Feb. 15, 2011) ("A defendant is entitled to only one direct appeal."), report & rec. adopted, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); Eduardo v. Smith,

---

23/    (...continued)
been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law."), cert. denied, 543 U.S. 1058, 125 S. Ct. 871 (2005); DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (petitioner's procedurally defaulted claims deemed exhausted where he could no longer obtain state-court review because of his procedural default); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"), cert. denied, 555 U.S. 903, 129 S. Ct. 233 (2008); Ramirez v. Attorney Gen., 280 F.3d 87, 94 (2d Cir. 2001); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) ("[I]f the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted."), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995).

10 Civ. 0622, 2010 WL 5584599 at *3 (S.D.N.Y. Jan. 11, 2010) ("Petitioner is foreclosed now from raising these issues in state court, since he is entitled to only one appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals.").

**B.** **In Any Event, Shaw's Ineffective Assistance of Counsel Claim Is Meritless**

    **1.** **The Strickland v. Washington Standard on Ineffective Assistance of Counsel**

        In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064.[24] This performance is to be judged by an objective standard of reasonableness. Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. at 2064.[25] The "'purpose of the effective assistance guarantee of the Sixth Amendment is . . . simply to ensure that criminal defendants receive a fair trial.' Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Cullen v.

---

[24]    Accord, e.g., Harrington v. Richter, 131 S. Ct. 770, 787 (2011); Premo v. Moore, 131 S. Ct. 733, 739 (2011); Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); Bell v. Miller, 500 F.3d 149, 156-57 (2d Cir. 2007); Henry v. Poole, 409 F.3d 48, 62-63 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006).

[25]    Accord, e.g., Harrington v. Richter, 131 S. Ct. at 787; Wiggins v. Smith, 539 U.S. at 521, 123 S. Ct. at 2535; Bell v. Cone, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); Henry v. Poole, 409 F.3d at 63.

Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Strickland v. Washington, 466 U.S. at 686, 689, 104 S. Ct. at 2063, 2065) (citation omitted).

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[26/]  Ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' . . . . Decisions by criminal defense counsel are often choices among bad alternatives . . . ."  Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 788 ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'").  Petitioner's "burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment."  Harrington v. Richter, 131 S. Ct. at 787 (quotations omitted).

---

[26/]     Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 787-88; Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Bierenbaum v. Graham, 607 F.3d 36, 50-51 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Bell v. Miller, 500 F.3d at 156-57; Henry v. Poole, 409 F.3d at 63; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

Second, the defendant must show prejudice from counsel's performance.  Strickland
v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at
1403.  The "question is whether there is a reasonable probability that, absent the errors, the fact
finder would have had a reasonable doubt respecting guilt."  Strickland v. Washington, 466 U.S. at
695, 104 S. Ct. at 2068-69.  Put another way, the "defendant must show that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different."  Id. at 694, 104 S. Ct. at 2068.[27]

_____

[27]    See also, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at
787; Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695,
122 S. Ct. at 1850; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 552
U.S. 836, 128 S. Ct. 75 (2007); Henry v. Poole, 409 F.3d at 63-64; Aparicio v. Artuz, 269
F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.),
cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

"A reasonable probability is a probability sufficient to undermine confidence in the
outcome."  Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g.,
Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 787; Wiggins
v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bierenbaum v. Graham, 607 F.3d at 51.  The
phrase "reasonable probability," despite its language, should not be confused with "'more
likely than not.'"  Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53
(1999); accord, e.g., Harrington v. Richter, 131 S. Ct. at 792; Kyles v. Whitley, 514 U.S.
419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S. 157, 175, 106 S. Ct.
988, 998 (1986) ("[A] defendant need not establish that the attorney's deficient performance
more likely than not altered the outcome in order to establish prejudice under Strickland.");
Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding
can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of
counsel cannot be shown by a preponderance of the evidence to have determined the
outcome.").  Rather, the phrase "reasonable probability" seems to describe a fairly low
standard of probability, albeit somewhat more likely than a "reasonable possibility."
Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at
1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between
"reasonable probability" and "reasonable possibility" is "slight").

The Supreme Court has counseled that these principles "do not establish mechanical rules." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 696, 104 S. Ct. at 2069.  The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  <u>Id.</u>

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'" <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001) (quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695-96, 104 S. Ct. at 2069); <u>accord</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>Hoke</u>, 928 F.2d 534, 538 (2d Cir. 1991).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." <u>Harrington</u> v. <u>Richter</u> 131 S. Ct. at 788; <u>see also</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403 ("The [Supreme] Court acknowledged that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'").

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 697, 104 S. Ct. at 2069.[28]

In addition, the Supreme Court has counseled that:

strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less

---

[28]     <u>Accord</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Robbins</u>, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

> than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[29/]

"The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d at 199; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's performance."); Bierenbaum v. Graham, 607 F.3d at 50-51; Bell v. Miller, 500 F.3d at 156-57. "'Surmounting Strickland's high bar is never an easy task.'" Harrington v. Richter, 131 S. Ct. at 788 ("[T]he Strickland standard must be applied with scrupulous care" and "the standard for judging counsel's representation is a most deferential one.").

---

[29/]    See also, e.g., Harrington v. Richter, 131 S. Ct. at 789-90 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Moreover, an "attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal." (citations omitted)); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

### 2.      Strickland and the AEDPA Review Standard

For purposes of this Court's AEDPA analysis, "the <u>Strickland</u> standard . . . is the

relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'"

<u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d 78, 95 & n.8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)).[30/]  "For

AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of

ineffective assistance of counsel is also 'clearly established.'"  <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95 n.8.

> Establishing that a state court's application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult.  The standards created by <u>Strickland</u> and
> § 2254(d) are both "highly deferential," and when the two apply in tandem, review
> is "doubly" so.  The <u>Strickland</u> standard is a general one, so the range of reasonable
> applications is substantial.  Federal habeas courts must guard against the danger of
> equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether counsel's actions were
> reasonable.  The question is whether there is any reasonable argument that counsel
> satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. 770, 788 (2011) (citations omitted); <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v.

<u>Pinholster</u>, 131 S. Ct. at 1403 ("Our review . . . is thus 'doubly deferential.'"); <u>Premo</u> v. <u>Moore</u>, 131

S. Ct. at 740-41; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698-99, 122 S. Ct. at 1852 ("For [petitioner] to succeed,

however, he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were

being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a

federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u>

---

[30/]      <u>See also</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. 1388, 1403 (2011); <u>Premo</u> v. <u>Moore</u>, 131
S. Ct. 733, 743 (2011); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535
(2003); <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002); <u>Mosby</u> v. <u>Senkowski</u>,
470 F.3d 515, 518-19 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Sellan</u>
v. <u>Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).

incorrectly.  Rather, he must show that the [state appellate court] applied <u>Strickland</u> to the facts of

his case in an objectively unreasonable manner." (citation omitted)); <u>see also</u>, <u>e.g.</u>, <u>Yarborough</u> v.

<u>Gentry</u>, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003); <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d at 519.

**3.      Application to Shaw's Claim**

Shaw claims that trial counsel was ineffective for failing to submit a motion alleging

police and prosecutorial misconduct for permitting a journalist to photograph Shaw while detectives

transported him from Sing Sing to his arraignment on these charges.  (Dkt. No. 2: Pet.  ¶ 12(A); Dkt.

No. 24: Shaw Traverse at 3-6.)  Prior to jury selection, however, Shaw raised, pro se, a motion

alleging police and prosecutorial misconduct for permitting a journalist to photograph Shaw while

detectives transported him from Sing Sing to his arraignment, and Justice White denied the motion

on the merits.  (<u>See</u> page 2 above.)

Courts in the Second Circuit have addressed the constitutionality of "perp walks,"

that is when an arrestee is paraded in front of the press.  While an arrestee "possesse[s] a privacy

interest in not having his 'perp walk' broadcast to the public, that privacy interest [can be]

outweighed by the [government]'s legitimate government purposes."  <u>Caldarola</u> v. <u>Cnty. of

Westchester</u>, 343 F.3d 570, 577 (2d Cir. 2003); <u>see</u>, <u>e.g.</u>, <u>Conradt</u> v. <u>NBC Universal, Inc.</u>, 536 F.

Supp. 2d 380, 392 (S.D.N.Y. 2008) (Chin, D.J.).  There is a legitimate state interest in the accurate

reporting of police activity.  <u>See Caldarola</u> v. <u>Cnty. of Westchester</u>, 343 F.3d at 576; <u>see also</u>, <u>e.g.</u>,

<u>Lauro</u> v. <u>Charles</u>, 219 F.3d 202, 213 (2d Cir. 2000) ("The interests of the press, and of the public

who might want to view perp walks, are far from negligible.").  A wholly staged perp walk, on the

other hand, has been found to violate an arrestee's Fourth Amendment rights because no legitimate

government purpose was served.  Lauro v. Charles, 219 F.3d at 213; see, e.g., Caldarola v. Cnty. of Westchester, 343 F.3d at 576;  Conradt v. NBC Universal, Inc., 536 F. Supp. 2d at 392 (plaintiff stated a claim for violation of Fourth Amendment where allegations that police allowed broadcaster to actively participate in planning and execution of arrest in unnecessarily dramatic manner).  Here, it appears that Shaw was photographed in the normal course of his transport from Sing Sing (where he was imprisoned on other charges) to his arraignment, and thus a legitimate government purpose was served.  In any event, even if the "perp walk" was staged, Shaw's remedy would be a § 1983 damages claim as reflected by the cases cited in this paragraph, and not dismissal of the rape charges against Shaw.[31/]

As such, trial counsel was not ineffective for failing to raise this meritless claim.  See, e.g., United States v. Noble, 363 F. App'x 771, 773 (2d Cir. 2010) ("An attorney's '[f]ailure to make a meritless argument does not amount to ineffective assistance.'"); United States v. Regalado, 518 F.3d 143, 149 n.3 (2d Cir. 2008); Smith v. Hulihan,  11 Civ. 2948, 2011 WL 4058764 at *16 (S.D.N.Y. Sept. 13, 2011) (Peck, M.J.) ("[T]rial counsel was not ineffective for failing to raise [a] meritless claim."); Calderon v. Perez, 10 Civ. 2562, 2011 WL 293709 at *38 (S.D.N.Y. Jan. 28, 2011) (Peck, M.J.) ("[D]efense counsel cannot be ineffective for failing to put forth [a] meritless argument . . . ."), report & rec. adopted, 2011 WL 1405029 (S.D.N.Y. Apr. 5, 2011); Devison v. Cunningham, 09 Civ. 1031, 2010 WL 5060789 at *23 (S.D.N.Y. Oct. 15, 2010), report & rec. adopted, 2010 WL 5060728 (S.D.N.Y. Dec. 8, 2010); Nickens v. Moscicki, 09 Civ. 3097, 2010 WL

---

[31/]    Shaw does not claim that the newspaper story resulted in prejudicial pretrial publicity that tainted the jury pool.

2899863 at *8 (S.D.N.Y. July 21, 2010); <u>Fabre</u> v. <u>Taylor</u>, 08 Civ. 5883, 2009 WL 162881 at *11

(S.D.N.Y. Jan. 20, 2009) (Peck, M.J.) ("[C]ounsel cannot be found ineffective for 'not pursuing a

strategy doomed to failure.'"), <u>report & rec. adopted</u>, 2009 WL 1457169 (S.D.N.Y. May 26, 2009).

## III.   <u>SHAW'S GRAND JURY CLAIM IS NOT COGNIZABLE ON HABEAS REVIEW</u>

Shaw claims that the indictment was defective because the grand jury did not accuse

Shaw, by name, of any crimes.  (Dkt. No. 2: Pet. ¶ 12(B); Dkt. No. 24: Shaw Traverse at 6-8.)  Shaw

argues that the indictment was defective because "it doesn't name nobody as committing any crime."

(Dkt. No. 20: Gill Aff. Ex. 3: Tr. 15.)[32]  As Justice White noted, "The indictment charges you,

Michael Shaw as the defendant. . . .   Your name is in the caption. . . ."  (Tr. 15-16.)  Under New

York law, that is enough.  <u>People ex rel. Johnson</u> v. <u>Graham</u>, 67 A.D.3d 1452, 1453, 887 N.Y.S.2d

891, 891 (4th Dep't 2009) (finding defective indictment claim meritless because even though

defendant was not specifically named in count, he was the only defendant named in the indictment),

<u>appeal denied</u>, 14 N.Y.3d 704, 898 N.Y.S.2d 99 (2010); <u>People ex rel. Lewis</u> v. <u>Graham</u>, 57 A.D.3d

1508, 1509, 870 N.Y.S.2d 665, 666 (4th Dep't 2008) (indictment where defendant's name was in the

caption but not the body was sufficient), <u>appeal denied</u>, 12 N.Y.3d 705, 899 N.Y.S.2d 51 (2009);

<u>see</u>, <u>e.g.</u>, <u>People</u> v. <u>D'Angelo</u>, 98 N.Y.2d 733, 734-35, 750 N.Y.S.2d 811, 812 (2002) ("An

indictment is jurisdictionally defective only if it does not effectively charge the defendant with the

---

[32]   Shaw's Traverse (at 7) cites <u>Chow Bing Kew</u> v. <u>United States</u>, 248 F.2d 466, 468 (9th Cir.)
(dismissing one of two counts against the defendant because the indictment failed to include
either his name or a reference to him), <u>cert. denied</u>, 355 U.S. 889, 78 S. Ct. 259 (1957).  In
<u>Kew</u>, the first count of the indictment included Kew's name but the second count omitted any
name.  <u>Chow Bing Kew</u> v. <u>United States</u>, 248 F.2d at 468.  In any event, <u>Kew</u> involved a
direct appeal from a federal conviction, not a habeas petition from a state conviction.

commission of a particular crime - for instance, if it fails to allege that the defendant committed acts constituting every material element of the crime charged." (citation omitted)).   In any event, this claim is not cognizable on habeas review.

For federal constitutional purposes, a jury conviction transforms any defect connected with the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt.  See, e.g., United States v. Mechanik, 475 U.S. 66, 68, 106 S. Ct. 938, 940 (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted.  Therefore, the convictions must stand despite the [grand jury] rule violation.").[33]  In Lopez v. Riley, the Second Circuit relied on Mechanik in holding

---

[33]     See also, e.g., United States v. Lombardozzi, 491 F.3d 61, 80 (2d Cir. 2007) ("It is well settled that a guilty verdict at trial 'remedies any possible defects in the grand jury indictment.'"); Batchilly v. Nance, 08 Civ. 7150, 2010 WL 1253921 at *30 (S.D.N.Y. Apr. 2, 2010) (Peck, M.J.), report & rec. adopted, 2011 WL 1226260 (S.D.N.Y. Mar. 30, 2011); Fernandez v. People, 06 Civ. 7174, 2009 WL 2744903 at *8 (S.D.N.Y. Aug. 28, 2009); Peterson v. New York, 06 Civ. 3369, 2009 WL 935669 at *13 (S.D.N.Y. Apr. 7, 2009) ("[B]ecause [petitioner] was convicted after a jury trial at which he testified," any error regarding a right to testify at grand jury proceedings was rendered harmless beyond a reasonable doubt.); Chacko v. United States, 96 Cr. 519, 04 Civ. 2258, 2005 WL 1388723 at *6 (S.D.N.Y. June 8, 2005) (errors in grand jury proceedings are generally considered harmless once a defendant has been convicted at a jury trial); James v. United States, 00 Civ. 8818, 2002 WL 1023146 at *12 (S.D.N.Y. May 20, 2002) (§ 2255 petition: "It is well established that a guilty verdict at trial remedies any defects or errors in the grand jury indictment."); Lemons v. Parrott, 01 Civ. 9366, 2002 WL 850028 at *5-6 (S.D.N.Y. May 2, 2002); Barnes v. Giambruno, 01 Civ. 8965, 2002 WL 850020 at *7 (S.D.N.Y. May 2, 2002); Burgess v. Bintz, 00 Civ. 8271, 2002 WL 727011 at *4 (S.D.N.Y. Apr. 24, 2002); McMoore v. Miller, No. 98CV1915, 2002 WL 975305 at *8 (N.D.N.Y. Apr. 19, 2002); Ballard v. Costello, No. 01-CV-1000, 2001 WL 1388297 at *2 (E.D.N.Y. Nov. 2, 2001); Davis v. Protuondo, 00 Civ. 8928, 2001 WL 1273801 at *6 (S.D.N.Y. Oct. 23, 2001) ("[A]n error in
(continued...)

that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court." Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); see also, e.g., Davis v. Mantello, 42 F. App'x 488, 490-91(2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)), cert. denied, 538 U.S. 986, 123 S. Ct. 1803 (2003); Batchilly v. Nance, 2010 WL 1253921 at *30; Fabre v. Taylor, 08 Civ. 5883, 2009 WL 162881 at *18 (S.D.N.Y. Jan. 20, 2009) (Peck, M.J.), report & rec. adopted, 2009 WL 1457169 (S.D.N.Y. May 26, 2009); Bramble v. Smith, 96 Civ. 5905, 1998 WL 395265 at *18 (S.D.N.Y. July 15, 1998) ("[C]laims of error relating to state grand jury proceedings are not cognizable on federal collateral review.").

Consequently, Shaw's claim alleging that the indictment was defective because the grand jury did not accuse Shaw of any crimes is not cognizable on habeas review.  See also, e.g., Nelson v. Heath, 11-CV-2183, 2011 WL 4711763 at *7-8 (E.D.N.Y. Oct. 3, 2011) ("[T]he alleged deficiency" --only naming the defendant in the caption of the indictment-- "was not of constitutional dimensions and cannot serve as the basis for federal habeas relief."); Robinson v. LaClair, 09-CV-3501, 2011 WL 115490 at *8 (E.D.N.Y. Jan. 13, 2011) ("Petitioner is not entitled to federal habeas review of this claim because [his defective indictment] claim does not raise a question of federal law proper for consideration by this court.").

---

33/    (...continued)
       grand jury proceedings is necessarily rendered harmless by a trial jury's subsequent finding
       of guilt beyond a reasonable doubt."); Spulka v. Walker, 97 Civ. 1879, 1998 WL 274287 at
       *2 (S.D.N.Y. May 27, 1998) ("[T]he guilty verdict of the petit jury cured any defect in the
       grand jury proceeding.").

Accordingly, Shaw's grand jury claim should be <u>DENIED</u>.

## IV.    SHAW'S CLAIM THAT HE WAS DENIED HIS RIGHT TO APPEAL SHOULD BE DENIED

Shaw claims that he was denied his right to appeal when the First Department denied his application for leave to appeal the denial of his C.P.L. § 440 motion.  (Dkt. No. 2: Pet. ¶ 12(C).) This claim is frivolous.[34]

Under New York law, a defendant has no right to appeal a C.P.L. § 440 motion but may appeal if leave to appeal is granted.  C.P.L. §§  450.10, 450.15, 460.15; <u>see</u>, <u>e.g.</u>, <u>Bennett</u> v. <u>Artuz</u>, 199 F.3d 116, 120 (2d Cir. 1999), <u>aff'd</u>, 531 U.S. 4, 121 S. Ct. 361 (2000); <u>Diaz</u> v. <u>Conway</u>, 04 Civ. 5062, 2008 WL 2461742 at *16 (S.D.N.Y. June 17, 2008) ("Although New York's Criminal Procedure Law does not provide for an appeal as a matter of right from a decision denying a motion pursuant to Section 440.10, an aggrieved defendant can apply for leave to appeal from such a decision to the Appellate Division."); <u>Felton</u> v. <u>Mazzuca</u>,  98 Civ. 4567, 2004 WL 2072538 at *2 (S.D.N.Y. Sept. 15, 2004); <u>Ramos</u> v. <u>Walker</u>, 88 F. Supp. 2d 233, 234 n.3 (S.D.N.Y. 2000).

As a matter of federal constitutional law, there is no right to appeal from collateral criminal proceedings, such as a C.P.L. § 440 motion.  <u>See</u>, <u>e.g.</u>, <u>Murray</u> v. <u>Giarratano</u>, 492 U.S. 1, 10, 109 S. Ct. 2765, 2771 (1989) ("State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings . . . ."); <u>Pennsylvania</u> v. <u>Finley</u>, 481 U.S. 551, 556-77, 107 S. Ct. 1990, 1994 (1987); <u>Word</u> v. <u>Lord</u>, 648 F.3d 129, 131-32 (2d Cir. 2011) ("As the Supreme Court has recognized, the Constitution does not compel states to provide post-conviction

---

[34]    In addition, this claim is unexhausted, but deemed exhausted and procedurally barred because Shaw did not raise this claim in state court.  (<u>See</u> page 9 above.)

proceedings for relief. . . .  [A]lleged errors in a post-conviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief."); Cruz v. Smith, 05 Civ. 10703, 2010 WL 582348 at *29 (S.D.N.Y. Feb. 17, 2010) ("As no constitutional provision requires a state to grant post-conviction review, most federal courts have rejected due process claims arising out of the conduct of state post-conviction proceedings, holding that such claims are not cognizable on habeas review." (citation omitted)); Jones v. Duncan, 162 F. Supp. 2d 204, 219 (S.D.N.Y. 2001) (Peck, M.J.) (procedural defects in post-conviction proceedings are not cognizable on federal habeas review).

        In addition, Shaw's Traverse also appears to challenge the First Department's failure to explain why it "rejected the claims contained in [Shaw's] pro se supplemental brief," and the New York Court of Appeals' denial of leave to appeal without decision.  (Dkt. No. 24: Shaw Traverse at 9; see page 9 above.)  This claim is frivolous.  The Supreme Court has made clear that state courts are not required to explain their decisions in order to be entitled to AEDPA deference.  See, e.g., Harrington v. Richter, 131 S. Ct. 770, 784 (2011) (quoted on page 18 above).

        Accordingly, Shaw's right to appeal claim should be DENIED.

## V.    SHAW'S CLAIM THAT HIS TRIAL CONVICTION WAS BASED ON PERJURED TESTIMONY IS MERITLESS

        Shaw claims that Holder and Ample committed perjury at trial.  (Dkt. No. 2: Pet. ¶ 12(D); see also Dkt. No. 24: Shaw Traverse at 10-12.)[35/]  The perjury claim was raised in Shaw's

---

[35/]    The sole issue before this Court relates to the perjury issue raised in Shaw's habeas petition, not any Crawford confrontation issue.

        The Confrontation Clause of the Sixth Amendment affords the accused the right "to be
(continued...)

pro se supplemental First Department brief (see page 9 above) and was denied by the First Department on direct appeal when it "considered and rejected the claims contained in [Shaw's] pro se brief."  People v. Shaw, 80 A.D.3d 465, 465-66, 914 N.Y.S.2d  155, 156-57 (1st Dep't.), appeal denied, 16 N.Y.3d 863, 923 N.Y.S.2d 425 (2011).

   "A petitioner's claim that his conviction was based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment."  Duncan v. Fischer, 410 F. Supp. 2d 101, 116 (E.D.N.Y. 2006) (citing Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959));

---

35/  (...continued)
confronted with the witnesses against him."  U.S. Const. amend. VI.  The Sixth Amendment's Confrontation Clause is applicable in state criminal trials via the Fourteenth Amendment.  E.g., Crawford v. Washington, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004); Douglas v. Alabama, 380 U.S. 415, 418, 85 S. Ct. 1074, 1076 (1965); Pointer v. Texas, 380 U.S. 400, 404, 85 S. Ct. 1065, 1068 (1965); Ellis v. Phillips, 04 Civ. 7988, 2005 WL 1637826 at *21 & n.38 (S.D.N.Y. July 13, 2005) (Peck, M.J.) (& cases cited therein).  The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to the scrutiny of cross-examination.  E.g., Douglas v. Alabama, 380 U.S. at 418-19, 85 S. Ct. at 1076-77; see, e.g., Crawford v. Washington, 541 U.S. at 50-59, 124 S. Ct. at 1363-69.

According to the Supreme Court in Crawford, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."  Crawford v. Washington, 541 U.S. at 68-69, 124 S. Ct. at 1374.  The state court's decision that WF's statements to Ample were not testimonial and thus not subject to the Confrontation Clause (see pages 3 & 9 above) was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.  The Confrontation Clause only applies to testimonial statements, and the Supreme Court has reserved the question of "whether and when statements made to someone other than law enforcement personnel are 'testimonial.'"  Davis v. Washington, 547 U.S. 813, 823 n.2, 126 S. Ct. 2266, 2274 n.2 (2006); accord, Michigan v. Bryant, 131 S. Ct. 1143, 1155 n.3 (2011).  It is not unreasonable to conclude under existing precedent that WF's hysterical statements immediately following the crime to Ample, a co-worker and friend, were non-testimonial.  See Davis v. Washington, 547 U.S. at 822-32, 126 S. Ct. at 2273-79; Crawford v. Washington, 541 U.S. at 51, 124 S. Ct. at 1364.  In any event, Shaw's petition does not raise the Confrontation Clause issue.

accord, e.g., Drake v. Portuondo, 553 F.3d 230, 240 (2d Cir. 2009) ("Supreme Court holdings have long 'established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.'" (quoting Napue)).[36]

"Under this standard, the [Supreme] Court has said that the conviction must be set aside if (1) 'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003) (fn. omitted) (quoting United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976)).[37]

"The petitioner has the burden of demonstrating, by a preponderance of evidence, that the witness committed perjury, and, in determining whether perjury occurred, a court must 'weigh all the evidence of perjury before it.'" Zimmerman v. Burge, 492 F. Supp. 2d at 196 (quoting Ortega v. Duncan, 333 F.3d 102, 106-07 (2d Cir. 2003)).

Here, Shaw's perjury claim is based on his argument that Holder's testimony was false because it conflicted with Detective Cole's testimony and that Ample's testimony included

---

[36]  See also, e.g., Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000) ("It has also long been established that a prosecutor who knowingly uses false evidence at trial to obtain a conviction acts unconstitutionally."); Deberry v. Spitzer, No. 05 CV 5286, 2011 WL 1239999 at *8 (E.D.N.Y. Feb. 17, 2011) ("It is well established that a defendant's due process rights are violated if the prosecutor knowingly uses perjured testimony to obtain a conviction."), report & rec. adopted, 2011 WL 1211969 (E.D.N.Y. Mar. 30, 2011).

[37]  Accord, e.g., Graham v. Greiner, 123 F. App'x 436, 437 (2d Cir. 2005); Thompson v. Artuz, No. 06-CV-0254, 2011 WL 736060 at *9 (W.D.N.Y. Jan. 4, 2011) ("A conviction must be set aside if the prosecutor knew, or should have known, of the perjury and there is any reasonable likelihood that the false testimony affected the verdict."), report & rec. adopted, 2011 WL 720074 (W.D.N.Y. Feb. 23, 2011); Zimmerman v. Burge, 492 F. Supp. 2d 170, 196 (E.D.N.Y. 2007); Duncan v. Fischer, 410 F. Supp. 2d at 116.

false, unsubstantiated statements regarding details of the crime.  (Pet. ¶ 12(D); Dkt. No. 20: Gill Aff. Ex. K: Shaw Pro Se Supp. 1st Dep't Br. at 27-29; Shaw Traverse at 9-12.)  At trial, Holder testified that she left the office around 5:30 p.m.  (See page 3 above.)  Shaw argues that because the crime was taking place around 5:30 and Cole testified that the incident occurred between 5:10 to 6:00 p.m., Holder must be lying.  (Shaw Pro Se Supp. 1st Dep't Br. at 27-28; Cole: Tr. 377-80; Shaw Traverse at 10.)  Shaw asserts that during a pretrial hearing on July 28, 2003, Detective Flaherty testified that WF told him the incident began when she was closing up the office at "about ten minutes after five." (Shaw Traverse at 10 & Ex.: 7/28/03 Hearing at 14.)  At trial, Ample testified that WF was robbed, raped, and that she handed the telephone to her husband, who "told my assistant Mannie to hang up and call 911 immediately."  (See page 4 above; Ample: Tr. 294-96.)  Shaw asserts that Ample committed perjury because at the first trial, Ample testified, "I gave the phone to my husband, and he told Maddie to hang up and called the police." (Shaw Traverse at 11; see Ample: 1st Tr. 56.)[38] As further evidence of perjury, Shaw asserts that Detective Flaherty testified that WF told him that "she was able to call her boss" who "came to the office and unlocked the door" and "then the police were called."  (Shaw Traverse at 10 & Ex.: 7/28/03 Hearing at 16.)

The Second Circuit has made clear that a "witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) (citing United States v. Dunnigan,

---

[38]    In an effort to clarify and/or impeach, Shaw's counsel asked, "Okay, and it was your husband or your assistant that actually called 911?" and Ample replied, "[m]y assistant." (Ample: Tr. 303.)

507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993)), cert. denied, 535 U.S. 1042, 122 S. Ct. 1808 (2002). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury."  United States v. Monteleone, 257 F.3d at 219; see, e.g., Torres v. Ercole, 06 Civ. 0674, 2009 WL 4067281 at *15 (S.D.N.Y. Nov. 24, 2009) (denying habeas relief on false testimony claim because "'any discrepancy between [witness's] testimony at the first trial and at the Huntley hearing resulted from his lack of recollection.'"), aff'd, 421 F. App'x 6 (2d Cir. 2011); Jackson v. Artus, 07 Civ. 1114, 2008 WL 4386826 at *20 (S.D.N.Y. Sept. 22, 2008) ("[T]here is no evidence that Siskey's testimony was perjurious, because the inconsistencies between Siskey's trial testimony, her complaint report, and Ince's statement to the police are minor.").   Here, the alleged perjured statements are minor at best, if not immaterial.  The difference between whether the incident occurred after "5:30 p.m.," began "about ten minutes after five" or between 5:10 and 6:00 p.m. are not necessarily contradictory. Similarly, the inconsistency in who called the police is trivial.  The inconsistencies were fully explained by Shaw's counsel during cross-examination at trial.  (E.g., Holder: Tr. 282; Ample: Tr. 303; Cole: Tr. 377-80.)[39]  There is no evidence that the prosecutor knew that the inconsistencies were perjurious, rather than the result of mistake or lack of recollection.

---

[39]      Even if the approximations of time were in direct conflict, these are issues of witness credibility best suited for the jury.  See, e.g., Seow v. Artuz, 320 F. App'x 46, 48 (2d Cir.) (affirming denial of habeas petition where petitioner challenged credibility of a key witness because "the jury makes credibility determinations"), cert. denied, 129 S. Ct. 2840 (2009); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (affirming denial of habeas claim: "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues"); Ennis v. Artus, 09 Civ. 10157, 2011 WL 3585954 at *20 (S.D.N.Y. Aug. 12, 2011) ("'[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury,' and thus a habeas court will 'defer to the jury's assessments of both of these issues.'"); Diaz v. Girdich, 04 Civ. 5061, 2005 WL 1287404 at *8 (S.D.N.Y. June 1, 2005), report & rec. adopted, 2007 WL 187677 (S.D.N.Y. Jan. 28, 2007).

Even if Holder or Ample testified falsely and Shaw could demonstrate perjury, there is no reasonable likelihood that the jury verdict was affected given the evidence presented at trial, including the DNA evidence conclusively linking Shaw to the crime.  See, e.g., United States v. Nash, 338 F. App'x 96, 99 (2d Cir. 2009) ("[E]ven if he could demonstrate perjury, [defendant] cannot show that the 'jury probably would have acquitted in the absence of the false testimony,' given the overwhelming physical evidence of guilt."); Hogan v. Ercole, No. 05-CV-5860, 2011 WL 3882822 at *13 (E.D.N.Y. Sept. 2, 2011) (Denying perjury claim where there was "a plethora of convincing evidence against petitioner[,] including . . . particles consistent with gunshot residue found on petitioner's hands . . . [because] there [was] likely not 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"); Campbell v. Greene, 440 F. Supp. 2d 125, 148 (N.D.N.Y. 2006) ("[I]n light of the substantial evidence presented at trial that established [petitioner's] guilt of the charged crimes, there is no possibility that the jury would have acquitted [petitioner] as to either charge even in the absence of the testimony that petitioner now claims is perjurious."); United States ex rel. Martin v. Jones, No. 03 C 4364, 2006 WL 2247000 at *4 (N.D. Ill. Aug. 1, 2006) ("Given the overwhelming evidence of Martin's guilt presented at trial," including physical evidence, "there is no likelihood that the jury's judgment was improperly affected by" the alleged perjury); Grant v. Ricks, Nos. 00-CV-6861, 03-MISC-0066, 2003 WL 21847238 at *5 (E.D.N.Y. July 29, 2003) (Weinstein, D.J.) (Even if burglary victim testified falsely that petitioner and he were not friends, habeas relief was inappropriate because the "jury could find petitioner guilty based on the other evidence-his presence at [the victim's] apartment and the fact

that he was later seen hurrying around the corner with a red cart full of items."), aff'd, 151 F. App'x 44 (2d Cir. 2005).

Accordingly, Shaw's claim that his conviction was based on perjured testimony should be DENIED.

## CONCLUSION

For the reasons discussed above, Shaw's habeas petition should be DENIED in its entirety and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6.[40] Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 640, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Sullivan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human

---

[40]   If the pro se plaintiff requires copies of any of the cases reported only in Westlaw, petitioner should request copies from opposing counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

44

Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:        New York, New York
              January 6, 2012

                                            Respectfully submitted,


                                            _____
                                            **Andrew J. Peck**
                                            United States Magistrate Judge


Copies to:    Michael Shaw (Mail)
              Alyson Joy Gill, Esq. (ECF)
              Judge Richard J. Sullivan

G:\OPIN\SHAW v WENDLEND